# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHARLES HARDEN, | : | |
| Plaintiff, | : | Case No. 3:06cv00248 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL BUSH, et al., | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Charles Harden, an inmate in federal custody, has filed two pro se cases against several Defendants concerning, in part, alleged breaches of a proffer agreement he had entered with the United States government during a federal criminal matter.[2] The sole remaining Defendant in these cases is Defendant Bush, a Special Agent with the Federal Bureau of Investigation. Plaintiff claims that Defendant Bush breached the proffer agreement in violation of Plaintiff's rights to both substantive and procedural due process. Plaintiff seeks, in part, compensatory and punitive damages.

This case is presently pending upon Plaintiff's Motion to Summary Judgment (Doc. #46), Defendant Bush's Motion for Summary Judgment (Doc. #48), Plaintiff's Response (Doc. #50), Defendant Bush's Reply (Doc. #51), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] The Court previously consolidated the present case with Plaintiff's other case (*Charles Harden v. Michael Bush*, Case No. 3:08cv00096).

## II. BACKGROUND

### A. The Proffer Agreement

Plaintiff explains, "The heart of my civil complaint against the Defendant Michael Bush is that he breached a duty owed to me under a proffer agreement between the United States government and myself, where the Defendant Bush was present at the agreement and assumed a duty not to reveal any of the information that I told to the government's Asst Atty Dwight K. Keller." (Doc. #46 at 2). Plaintiff alleges, "Because of Defendant's action I am harmed in (3) major ways[:] (1) A duty of the Defendant owed to me was violated, (2) As a result of the Defendant['s] breach proffered information was used against me at the Montgomery County Courthouse when the Defendant's sworn statement was filed in State Court by Vincent Popp as Exhibit ('C') under Case No. 2006-CV-2542 file[d] by Mr. Popp on October 18, 2006; (3) and due to the Defendant's action proffered information is now a matter of public records...." (Doc. #46 at 3).

There is no genuine dispute in the present case over the existence of the proffer agreement upon which Plaintiff relies or over the fact that the proffer agreement contains the following language:

> First, no statements made, or other information provided by your client [Charles Harden] during the proffer session, or testimony given during any Grand Jury appearance to which he agrees to appear will be used against him <u>in any criminal case</u> instituted by the United States Government. The United States Government will not provide or share any such statements or information provided by your client <u>with any other state or local prosecution authority</u>.

(Doc. #48, attached Exhibits: Keller Affidavit and letter) (emphasis added).

### B. Plaintiff's State-Court Case

In support of his motion for summary judgment in the present case, Defendant Bush has attached his affidavit and a copy of the Complaint Plaintiff filed in the Montgomery County, Ohio Court of Common Pleas (*Charles Harden v. City of Dayton*,

2

Case No. 2006cv2542). Plaintiff alleged in his state-court Complaint that on January 9, 2003 he was a passenger in a car fleeing from City of Dayton Police Officer Andrew Clark. Plaintiff explained that after the car he was in crashed, he got out and "laid on the ground with [his] hands in sight giving up to law enforcement." (Doc. #48; Complaint attached at ¶8). At that point, according to Plaintiff, Police Officer Clark struck him on the left side of his head and ear. Plaintiff claimed, in part, in his state-court Complaint that Police Officer Clark used excessive force to effect his arrest in violation of the Fourth Amendment to the United States Constitution. *Id.* at ¶s 9-19.

C.     **The Present Case**

Defendant Bush's affidavit in the present case explains that he was subpoenaed three times by attorney Vincent Popp, who represented Police Officer Clark and the City of Dayton in Plaintiff's state case. (Doc. #48, attached Exhibits). The subpoenas were served on the FBI's field office in Cincinnati, Ohio. In response, FBI Chief Division Counsel wrote a letter opining that Attorney Popp's subpoenas complied with applicable federal Regulations. As result, FBI's Counsel authorized Defendant Bush to testify during Plaintiff's state case. *See id*. FBI's Counsel also explained that Defendant Bush (and two other FBI agents) "observed the plaintiff after his arrest on bank robbery charges by Dayton Police Officers. They are being called as defense witnesses to testify as to the plaintiff's statements at that time concerning how he was injured during that arrest. Their testimony will concern those statements. None of the agents will produce any FBI documents or other evidence...." *Id*.

In the present case, Defendant Bush's counsel explains in the Motion for Summary Judgment that Defendant Bush provided an affidavit, dated July 2006, to Attorney Popp, in lieu of giving testimony during the state court civil action. (Doc. #48 at 3). The copy of Defendant Bush's July 2006 affidavit (attached to his Motion for Summary Judgement) reveals that Defendant Bush interviewed Plaintiff on serval occasions. Defendant Bush stated, "At the first interview, I noticed an injury to Mr. Harden's ear and asked Mr.

3

Harden how he had sustained the injury. At first, he said he did not remember and then said his ear was injured as a result of the car crash. He said several different times that he got the injury in the crash." (Doc. #48, Bush's July 2006 Affidavit at ¶5). Defendant Bush's affidavit continued to describe Plaintiff's admissions to five specific bank armed bank robberies in the Dayton, Ohio area and his admission that he was the person carrying the gun during each of the robberies. *Id*. at ¶7. Defendant Bush further stated:

> With regard to the River Valley Credit Union robbery of January 9, 2003, Mr. Harden admitted carrying a sawed-off shotgun. He said the shotgun was thrown from the vehicle he was in after the robbery, as the vehicle was being pursued by law enforcement authorities.
>
> The shotgun was recovered near the James H. McGhee Boulevard exit from Route 35, where Mr. Harden had said it had been abandoned.

*Id*. at ¶s 7-8.

In the present case, Plaintiff's constitutional claims rest on his allegation that Defendant Bush's affidavit breached Plaintiff's proffer agreement by disclosing Plaintiff's informant status during the federal bank-robbery prosecutions and by disclosing his willingness to testify during trials of those cases about armed bank robberies in the Dayton, Ohio area. (Doc. #50 at 3). Plaintiff further alleges that Defendant Bush "provided dates and details of these crimes to Mr. Popp in an un-authorized way." *Id*. at 4.

## III. SUMMARY JUDGMENT STANDARDS

The parties have submitted dual or cross motions for summary judgment. Resolving such competing motions does not alter the applicable legal standards described in Fed. R. Civ. P. 56. "'The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as submitted for final resolution on a stipulated record.'" *Taft Broadcasting Company v. United States*, 929 F.2d 240, 248 (6th

4

Cir. 1991) (citations omitted). Instead, the Court grants or denies each motion for summary judgment on its own merits, applying the standards of Rule 56. *See id.*, 929 F.2d at 248.

Under Rule 56, a party is entitled to summary judgment when there is no genuine dispute about any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247 (1986).

> The moving party bears the burden of demonstrating that there are no genuine issues of material fact, which may be discharged by 'showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case. The nonmoving party must then put forth 'significantly probative' evidence supporting its claims in order to defeat summary judgment. Of course, we must be mindful that summary judgment is inappropriate whenever the evidence raises a genuine issue of material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Macy v. Hopkins County School Bd. of Educ*., 484 F.3d 357, 363 (6th Cir. 2007) (internal citations and quotation marks omitted); *see Hager v. Pike County Bd. of Education*, 286 F.3d 366, 370 (6th Cir. 2002). Because Plaintiff proceeds *pro se* in this case, the Court construes his filings liberally in his favor. *See Spotts v. United States*, 425 F.3d 248, 250 (6th Cir. 2005).

**IV.   ANALYSIS**

Plaintiff contends that he is entitled to summary judgment because there is no dispute over the fact that Defendant Bush breached the proffer agreement by revealing information to attorney Popp about Plaintiff's informant status and the information Plaintiff had provided to the government. (Doc. #46 at 3). Plaintiff also contends that Defendant Bush's Motion for Summary Judgment does "not deny that he participated in the proffer meetings the Government and myself, nor [does] Bush deny that he assumed a duty not to share information provided by me to him and other law enforcement officials

at the proffer agreement about armed bank robbery related crimes." (Doc. #50 at 2).

The constitutional principles applicable to proffer agreements were cogently discussed in *United States v. Heatley*, 39 F.Supp.2d 287, 299 (S.D.N.Y. 1998) as follows:

> It is well-settled that when the a defendant waives rights in reliance upon a government promise, due process requires that the defendant be entitled to have the government held to its end of the bargain. Thus, for example, promises in a plea agreement are binding upon the government, *see Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Salameh,* 152 F.3d 88, 120 (2nd Cir. 1998); *United States v. Knights,* 968 F.2d 1483, 1486 (2nd Cir.1992). Likewise, a suspect's post-arrest statements may be deemed involuntary if induced by the government's unfulfilled or unfulfillable promises. *See United States v. Ruggles,* 70 F.3d 262, 265 (2nd Cir. 1995); *United States v. Fisher,* 700 F.2d 780, 783 (2nd Cir.1983). The Court can see no logical reason why the government should not equally be held to its assurances if those assurances were relied upon by the defendant in deciding whether to enter a proffer session. A defendant entering a proffer session is waiving valuable rights – first and foremost, his or her Fifth Amendment right not to incriminate oneself – which, even if that waiver is mitigated somewhat by the government's agreement not to use the statements directly in its case-in-chief, still may provide substantial leads or material for impeachment which the defendant would otherwise be free not to provide. In order for the waiver of these rights to be truly knowing, voluntary, and intelligent, there must be some assurance that the promises made by the government which induce that waiver will be enforced.

*Heatley,* 39 F.Supp.2d at 299. Because Plaintiff presently seeks to enforce such promises made by the Government in his proffer agreement, the analytical framework is straightforward: First, what did the Government promise? Second, did the Government breach its promise(s)? To resolve these questions, Plaintiff's proffer agreement is reviewed under traditional contract principles. *See United States v. Reed*, 272 F.3d 950, 954 (7th Cir. 2001); *cf. United States v. Harris*, 473 U.S. 222, 224 (6th Cir. 2006)(traditional contract principles apply to plea agreements).

The plain language of the proffer agreement contained a promise by the

Government not to use Plaintiff's statements "against him <u>in any criminal case</u> instituted by the United States Government...." (Doc. #48, Keller Affidavit and letter attached). Plaintiff does not allege that Defendant Bush revealed or used any of the statements given by Plaintiff during the proffer session, or otherwise given, in any criminal case brought by the United States Government. Instead, Plaintiff challenges Defendant Bush's act of providing information to attorney Popp during Plaintiff's state civil case. Given the bright-line distinctions between a civil and a criminal case, Defendant Bush's disclosures to attorney Popp in a civil case did not constitute a disclosure during a criminal case, let alone a criminal case brought against Plaintiff by the United States. Consequently, Defendant Bush's disclosures did not breach this particular non-disclosure promise by the Government in the proffer agreement.

The Government also promised in the proffer agreement not to "provide or share any such statements or information provided by your client [Charles Harden] with any other state or local prosecution authority." (Doc. #48, Keller Affid., Letter attached). The plain language of this non-disclosure promise precluded disclosures to "any other state or local prosecution authority," *id*., which, for example, would have included a state, city, or county criminal prosecutor. There is no genuine dispute in this case that Defendant Bush provided information to attorney Popp, who was a defense counsel in the civil case Plaintiff had filed in state court. As a result, Defendant Bush's disclosures to attorney Popp did not violate the Government's promise not to disclose information to any state or local prosecution authority. Plaintiff contends otherwise as follows:

> This Court only needs to read the Proffer Contract to see that the contract is formed in (3) three terms. (1) No information will be used against me in any criminal case; (2) the Government may make 'derivative' use of the information to avoid a <u>Kastigar</u> hearing; and (3) I may be called as a Government witness at any trial about my statements made during the Proffer meetings.
>
> [Defendant] Bush wants this Court to believe that since he revealed Government proffered information to Mr. Popp, private attorney in a civil

case and not in '<u>any criminal case</u>,' his actions are excused.

> [Defendant] Bush disclosed my informant status concerning my willingness to testify at trial about armed bank robbery crimes in the Dayton area. The information he disclosed had no relationship to the civil matter. This Court must reject [Defendant] Bush's claim because it's clear by the terms in the contract how the proffered information is to be put to use.

(Doc. #50 at 3).

Accepting, as Plaintiff contends, that Defendant Bush provided information to attorney Popp that was irrelevant to the state civil case does not show that Defendant Bush breached the terms of the proffer agreement. Again, the Government's promises in the proffer agreement only prohibited the Government from disclosing information in any criminal case brought by the federal government and from disclosing information to any other state or local prosecution authority. The undisputed fact that Defendant Bush gave information to attorney Popp, who was a civil attorney defending a civil case brought by Plaintiff in state court, did not violate those governmental promises, regardless of whether or not the information Defendant Bush provided was relevant to those proceedings.

Accordingly, the record lacks a genuine dispute over the circumstances surrounding and relating to Defendant Bush's disclosures, and considering those circumstances, his disclosures did not violate the terms of Plaintiff's proffer agreement. Defendant Bush is therefore entitled to summary judgment on Plaintiff's federal constitutional claims.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Motion for Summary Judgment (Doc. #46) be DENIED;

2. Defendant Bush's Motion for Summary Judgment (Doc. #48) be GRANTED; and

3. The case be terminated on the docket of this Court.

April 16, 2009

                                              <u>s/ Sharon L. Ovington</u>
                                                    Sharon L. Ovington
                                         United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).